```
                    UNITED STATES DISTRICT COURT
                             FOR THE
                    MIDDLE DISTRICT OF PENNSYLVANIA
```

KENTLIN HOPKINS,                :
                                :
        Plaintiff               :
                                :
    v.                          :      CIVIL NO. 3:CV-13-2397
                                :
A. MULHERN, ET AL.,             :      (Judge Conaboy)
                                :
        Defendants              :

_____

## MEMORANDUM
### Background

Kentlin Hopkins, an inmate presently confined at the Luzerne County Correctional Facility, Wilkes-Barre, Pennsylvania, initiated this pro se civil rights action pursuant to 42 U.S.C. § 1983. Along with his complaint, Plaintiff has submitted a request for leave to proceed in forma pauperis.[1] An Amended Complaint (Doc. 4) was subsequently submitted.[2] For the reasons set forth below, Hopkins' action will be dismissed, without prejudice, as legally frivolous pursuant to the screening provisions of 28 U.S.C. § 1915.

Named as Defendants are the following officials of the Luzerne

---

1. Hopkins completed this Court's form application to proceed in forma pauperis and authorization to have funds deducted from his prison account. The court then issued an Administrative Order directing the Warden of the Luzerne County Prison to commence deducting the full filing fee from Plaintiff's prison trust fund account.

2. Plaintiff describes his submission as being an adjustment offered for the purpose of raising an additional retaliation claim.

1

County Prison: Ms. A. Mulhern[3]; Lieutenant Dumadour; Sergeant B. Mrochko; Captain K. Gallagher; Hearing Examiner Ray;[4] and Correctional Officer Wolfe.

The Original Complaint filed in this matter is dated August 26, 2013. An Amended Complaint dated September 11, 2013 was subsequently submitted. Based upon a review of both filings, there is some confusion as to whether this matter concerns the issuance of one or two misconduct charges.

According to both the Original and Amended Complaints, Ms. Mulhern made assumptions and accusations against Hopkins. As a result of those claims, Sergeant Mrochko and Captain Gallagher removed Plaintiff from his cell as well as from his substance abuse recovery program and threatened him with criminal prosecution. Hopkins' Original Complaint indicates that his initial removal from his cell and institutional treatment program transpired on or about August 6, 2013 and that on or about August 8, 2013, Hearing Examiner Ray had the Plaintiff placed in the prison's Restrictive Housing Unit (RHU).[5]

It is next asserted that on August 13, 2013, Lieutenant Dumadour apparently confirmed Ray's decision to place Plaintiff in the RHU and remove him from his substance abuse treatment program. Hopkins' Amended Complaint indicates that after his transfer to the

---

3. The Original Complaint describes Mulhern as being a drug & alcohol therapist. See Doc. 1, ¶ III.

4. Plaintiff at times lists this Defendant's name as being Gray.

5. It is unclear as to whether this placement was a sanction which was imposed as the result of a misconduct hearing.

RHU, he was subsequently released back into general population for an undisclosed period of time but then returned to the RHU with an explanation that his release back to general population was a mistake. Plaintiff was purportedly served with a misconduct. The Amended Complaint also includes a vague contention that Correctional Wolfe was involved with the issuance of the misconduct.

On September 10, 2013, Hopkins alleges that he was found guilty of the misconduct charge by Hearing Examiner Ray despite video evidence to the contrary. Following an administrative appeal, Lieutenant Dumadour apparently confirmed Ray's decision to place Plaintiff in the RHU and remove him from his substance abuse treatment program. The Amended Complaint further contends that the Defendants' alleged actions were retaliatory. As relief, Plaintiff seeks injunctive relief and monetary damages for every day spent in the RHU as well as for mental pain and suffering.

## **Discussion**

28 U.S.C. § 1915 imposes obligations on prisoners who file civil actions in federal court and wish to proceed in forma pauperis under 28 U.S.C. § 1915, e.g., that the full filing fee ultimately must be paid (at least in a non-habeas suit) § 1915(e)(2)provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from

such relief.

When considering a complaint accompanied by a motion to proceed in forma pauperis, a district court may rule that process should not be issued if the complaint is malicious, presents an indisputably meritless legal theory, or is predicated on clearly baseless factual contentions. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989); Wilson v. Rackmill, 878 F.2d 772, 774 (3d Cir. 1989). Indisputably meritless legal theories are those "in which either it is readily apparent that the plaintiff's complaint lacks an arguable basis in law or that the defendants are clearly entitled to immunity from suit ... ." Roman v. Jeffes, 904 F.2d 192, 194 (3d Cir. 1990) (quoting Sultenfuss v. Snow, 894 F.2d 1277, 1278 (11th Cir. 1990)).

The United States Court of Appeals for the Third Circuit has added that "the plain meaning of 'frivolous' authorizes the dismissal of in forma pauperis claims that . . . are of little or no weight, value, or importance, not worthy of serious consideration, or trivial." Deutsch v. United States, 67 F.3d 1080, 1083 (3d Cir. 1995). It also has been determined that "the frivolousness determination is a discretionary one," and trial courts "are in the best position" to determine when an indigent litigant's complaint is appropriate for summary dismissal. Denton, 504 U.S. at 33.

**Personal Involvement**

With respect to the claims against Lieutenant Dumadour, civil rights claims cannot be premised on a theory of respondeat

4

superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

Prisoners also have no constitutionally protected right to a grievance procedure. See Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 137-38 (1977)(Burger, C.J., concurring) ("I do not suggest that the [grievance] procedures are constitutionally mandated."); Speight v. Sims, No. 08-2038, 2008 WL 2600723 at *1 (3d. Cir. Jun 30, 2008)(citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.")

While prisoners do have a constitutional right to seek redress of their grievances from the government, that right is the right of access to the courts which is not compromised by the failure of prison officials to address an inmate's grievance. See Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991) (federal grievance regulations providing for administrative remedy procedure do not create liberty interest in access to that procedure). Pursuant to

those decisions, any attempt by a prisoner to establish liability against a correctional official based upon their handling of his administrative grievances or complaints does not support a constitutional claim. See also Alexander v. Gennarini, 144 Fed. Appx. 924, 925 (3d Cir. 2005)(involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).

Pursuant to the standards announced in Flick and Alexander, Plaintiff's action to the extent that it seeks to establish liability against Lieutenant Dumadour solely based upon his failure to overturn the Hearing Examiner's decision following an administrative appeal is simply insufficient for establishing civil rights liability.

**Disciplinary Proceedings**

Plaintiff implies that Hearing Examiner Ray violated his due process rights by not affording sufficient consideration to video evidence presented during a disciplinary hearing.

In Wolff v. McDonnell, 418 U.S. 539, 563-73 (1974), the United States Supreme Court recognized that "prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Id. at 556. The Court also recognized five requirements of due process which must be provided to inmates in a prison

6

disciplinary proceeding before penalties can be imposed. An additional procedural requirement was set forth in Superintendent, Massachusetts Correctional Inst. at Walpole v. Hill, 472 U.S. 445, 453-56 (1985). In that case, the Supreme Court held that there must be some evidence which supports the conclusion of the disciplinary tribunal.

The United States Supreme Court in Sandin v. Conner, 515 U.S. 472, 480-84 (1995)shifted the focus of liberty interest analysis from one "based on the language of a particular regulation" to "the nature of the deprivation" experienced by the prisoner. Id. at 481. In Sandin, the Supreme Court reasoned, inter alia, that "[d]iscipline by prison officials in response to a wide range of misconduct" is expected as part of an inmate's sentence. Id. at 485. Courts within this circuit, applying Sandin in various actions, have found no merit in procedural due process claims presented regarding institutional disciplinary hearings which result in disciplinary custody placement. See Torres v. Fauver, 292 F.3d 141, 150-51 (3d Cir. 2002)(because prisoners can reasonably anticipate transfer to disciplinary custody, placement in segregation as a disciplinary sanction did not implicate a protected liberty interest); Griffin v. Vaughn, 112 F.3d 703, 706-08 (3d Cir. 1997)(no liberty interest in avoiding fifteen (15) month placement in administrative custody because said confinement was not atypical); Smith v. Mensinger, 293 F.3d 641, 645, 654 (3d Cir. 2002)(seven (7) months of disciplinary confinement did not implicate liberty interest).

In Diaz v. Canino, 2012 WL 5352483 *3 (3d Cir. Oct. 31, 2012),

the Third Circuit Court of Appeals reiterated that the sanctions resulting from prison disciplinary hearings do not affect a protected liberty interest unless the sanction imposes an atypical and significant hardship on the inmate. In Diaz, the Court of Appeals concluded that a 360 day term of disciplinary confinement did not implicate a protected liberty interest.

Plaintiff does not allege that he was sanctioned to a loss of good conduct time or that the sanctions imposed by Ray adversely affected the length of his sentence. Second, there is no clear indication as to the length of the disciplinary confinement sanction imposed by Hearing Examiner Ray. Clearly, Plaintiff has not indicated that it was excessive under the guidelines established by Diaz. Since there is no allegation set forth by Hopkins that the term of disciplinary confinement imposed against him, which started no earlier than August 6, 2013,[6] is less than the sanction at issue in Diaz, Hearing Examiner Ray is entitled to entry of dismissal as his challenged actions did not implicate a protected liberty interest.

**Substance Abuse Treatment**

Plaintiff further contends that as a result of accusations by Therapist Mulhern he was issued disciplinary sanctions which resulted in his removal from a substance abuse treatment program.

As previously discussed, the Supreme Court in Sandin stated that "[d]iscipline by prison officials in response to a wide range

---

6. As previously noted, Plaintiff's Amended Complaint indicates that he was temporarily released back to general population for a temporary period of time after his initial RHU placement.

8

of misconduct" is expected as part of an inmate's sentence. Sandin, 515 U.S. at 485. The Court of Appeals for the Third Circuit in addressing a similar scenario has stated that disqualification of a prisoner from an institutional substance abuse program "is not outside what a prisoner 'may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law.'" Espinoza v. Lindsay, 500 Fed. Appx. 123, 125 (3d Cir. Sept. 27, 2012).

Similarly, in Douvos v. Quintana, 382 Fed. Appx. 119, 122 (3d Cir. Dec. 29, 2009) the Third Circuit Court of Appeals held that the expulsion of an inmate from a rehabilitative program for a violation of its rules and regulations falls within the expected parameters of the prisoner's criminal sentence.

Based upon those rulings, the removal of Hopkins from a substance abuse program did not implicate a protected liberty interest. Accordingly, any claim that Plaintiff's removal from a substance abuse program was improper is likewise subject to dismissal.

**Verbal Threats**

Plaintiff generally alleges that Therapist Mulhern made verbal assumptions and accusations against him. His Original Complaint also indicates that he was verbally threatened with criminal prosecution.

The use of words generally cannot constitute an assault actionable under § 1983. Johnson v. Glick, 481 F.2d 1028, 1033 n.7 (2d Cir.); Maclean v. Secor, 876 F. Supp. 695, 698-99 (E.D. Pa.

9

1995); Murray v. Woodburn, 809 F. Supp. 383, 384 (E.D. Pa. 1993) ("Mean harassment . . . is insufficient to state a constitutional deprivation."); Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185, 189 (D.N.J. 1993) ("[V]erbal harassment does not give rise to a constitutional violation enforceable under § 1983.").

Mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations. Balliet v. Whitmire, 626 F. Supp. 219, 228-29 (M.D. Pa.) ("[v]erbal abuse is not a civil rights violation . . ."), aff'd, 800 F.2d 1130 (3d Cir. 1986) (Mem.). A constitutional claim based only on verbal threats will fail regardless of whether it is asserted under the Eighth Amendment's cruel and unusual punishment clause, see Prisoners' Legal Ass'n, 822 F. Supp. at 189, or under the Fifth Amendment's substantive due process clause.

Verbal harassment or threats, with some reinforcing act accompanying them, however, may state a constitutional claim. For example, a viable claim has been found if some action taken by the defendant escalated the threat beyond mere words. See Northington v. Jackson, 973 F.2d 1518 (10th Cir. 1992) (guard put a revolver to the inmate's head and threatened to shoot); Douglas v. Marino, 684 F. Supp. 395 (D.N.J. 1988) (involving a prison employee who threatened an inmate with a knife). However, alleged instances of verbal harassment which are not accompanied by any physical contact are constitutionally insufficient. See Hart v. Whalen, 2008 WL 4107651 *10 (M.D. Pa. July 29, 2008); Wright v. O'Hara, 2004 WL 1793018 *7 (E.D. Pa. 2004)(correctional officer's words and

10

gestures, including lunging at prisoner with a clenched fist were constitutionally insufficient because there was no physical contact).

There is no indication that any of the verbal harassment allegedly voiced against Hopkins was accompanied by a reinforcing act involving a deadly weapon as contemplated under Northington and Douglas. More importantly, it is not alleged that any of the alleged verbal abuse was accompanied by any physically intrusive behavior or made by any of the named Defendants. Given the vague circumstances described by Plaintiff, any verbal remarks which may have been made by any of the Defendants were not of the magnitude to shock the conscience as contemplated by this Court in S.M. v. Lakeland School District, 148 F. Supp.2d 542, 547-48 (M.D. Pa. 2001) and thus, did not rise to the level of a constitutional violation.

**Retaliation**

It has been recognized that the filing of a disciplinary charge, although not otherwise actionable under § 1983, is actionable if done in retaliation for an inmate's filing of a grievance pursuant to established procedures. Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989); see also Newsom v. Norris, 888 F.2d 371, 377 (6th Cir. 1989) (filing of false disciplinary charges is not a constitutional violation unless charges were filed in retaliation for the exercise of a constitutional right).

"Retaliation for the exercise of a constitutional right is itself a violation of rights secured by the Constitution." White

11

v. Napoleon, 897 F.2d 103, 111-12 (3d Cir. 1990); Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000)(a prisoner litigating a retaliation claim need not prove that he had an independent liberty interest in the privileges that he was denied, only that the challenged actions were motivated in substantial part by a desire to punish him for the exercise of a constitutional right).

In Rauser v. Horn, 241 F.3d 330, 333 (2001), the Third Circuit held that a prisoner must prove that the conduct which led to the alleged retaliation was constitutionally protected. If the prisoner satisfies that requirement he must then show he suffered some "adverse action" at the hands of prison officials. Id. Allah defined adverse action as being "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." Allah, 229 F.3d at 225.

Next, the prisoner must prove a causal link between the exercise of the constitutional right and the adverse action against him. Under Rauser, once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest. Id. at 334.

A review of the Amended Complaint shows that there is no specific allegation that any Defendant was acting in retaliation. Since the filing of a falsified disciplinary charge is only

12

actionable if it is retaliatory, a determination of whether Defendants acted in retaliation is appropriate regardless of whether there is a specific allegation of retaliation set forth in the Amended Complaint. However, in the present case the Amended Complaint is simply devoid of any facts which could support a claim that the misconduct was issued because Hopkins had engaged in some type of constitutionally protected conduct.

Based on those factors, it is clear that Plaintiff has not presented any facts which could establish a retaliatory motive by any of the Defendants. Thus, Hopkins' vague, speculative, wholly conclusory claim of being subjected to retaliation fails to satisfy the requirements of <u>Sprouse</u> and <u>Rauser</u>.

**Emotional Injury**

Hopkins' Amended Complaint asserts that he has suffered mental pain and suffering for which he seeks to recover monetary damages. There is no allegation that Plaintiff suffered any accompanying physical injury.

It is unclear as to whether Plaintiff is seeking to recover compensatory damages for emotional and psychological injuries sustained as a result of the Plaintiff's RHU detention. For the reasons outlined below, Hopkins is not entitled to recover compensatory damages for mental anguish or emotional injury.

42 U.S.C. § 1997e(e) provides that "[n]o federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." In

Allah v. Al-Hafeez, 226 F.3d 247,250 (3d Cir. 2000), the United States Court of Appeals for the Third Circuit recognized that where a plaintiff fails to allege actual injury, Section 1997e(e) bars recovery of compensatory damages. However, the Court of Appeals added that an inmate alleging a violation of his constitutional rights may still pursue the action to recover nominal and/or punitive damages even in the absence of compensable harm. Under the standards announced in Allah, Plaintiff's request for monetary relief to the extent that it seeks compensatory damages for emotional and psychological injuries caused by his RHU confinement and removal from a substance abuse program is barred by Section 1997e(e).

**Conclusion**

Since Plaintiff's complaint is "based on an indisputably meritless legal theory," it will be dismissed, without prejudice, as legally frivolous. Wilson, 878 F.2d at 774. An appropriate Order will enter.

AND NOW, THEREFORE, THIS 17th DAY OF OCTOBER, 2013, IT IS HEREBY ORDERED THAT:

1. Plaintiff's complaint is **DISMISSED WITHOUT PREJUDICE** as frivolous pursuant to 28 U.S.C. § 1915 (e)(2)(B)(i).

2. The Clerk of Court is directed to **CLOSE** the case.[7]

3. Any appeal from this order will be deemed frivolous, without probable cause and not taken in good faith.

        S/Richard P. Conaboy
        RICHARD P. CONABOY
        United States District Judge

---

7. The dismissal of this action does not relieve Plaintiff of the obligation to pay the full filing fee. Until the filing fee is paid in full, the Administrative Order issued in this case is binding on the Warden of the Luzerne County Prison, as well as the Superintendent of any correctional facility to which Plaintiff is transferred.